IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEISHA D. SIMMONS,<br>*Independent Administrator of the Estate of Steven L. Smith*,<br>Plaintiff,<br><br>v.<br><br>CITATION OIL AND GAS CORPORATION,<br>Defendant.<br><br>―――――――――――――――――――――<br><br>CITATION OIL AND GAS CORPORATION,<br>Third-Party Plaintiff,<br><br>v.<br><br>PRECISION PLUGGING AND SALES, INC.,<br>Third-Party Defendant. | Case No. 19–CV–00053–JPG |

## MEMORANDUM & ORDER

This is a personal injury case arising from the death of Steven L. Smith, who died tragically while working on an oil field. Before the Court is Third-Party Defendant Precision Plugging and Sales, Inc.'s ("Precision's") Motion to Dismiss Third-Party Complaint. (ECF No. 54; Mem. in Support, ECF No. 55). Third-Party Plaintiff Citation Oil and Gas Corporation ("Citation") responded. (ECF No. 58). For the reasons below, the Court **DENIES** Precision's Motion.

**I. PROCEDURAL & FACTUAL HISTORY**

In 2017, Citation owned and operated an oil field in Crossville, Illinois within this District. (Compl. at 13, ECF No. 1). More specifically, it hired Precision as an independent contractor to extract oil from an elevated pumpjack well known as "EM Fenton #9." (*See id.*).

Near EM Fenton #9, Precision owned and maintained a trailer that "was used as a place of shelter, to store tools and to hold meetings." (*Id.* at 14). The trailer contained a propane heater with "an ignited pilot light." (*Id.*).

Sadly, "crude oil and Hydrogen Sulfide began discharging from" EM Fenton #9 while Smith, a Precision employee, was working on the site. (*Id.*). Those stray combustibles were ignited by the propane heater, causing an explosion that engulfed Smith in flames, killing him. (*Id.*).

Smith's estate sued Citation in this Court, alleging several state-law tort claims. (*See id.* at 1–11). Citation then filed a Third-Party Complaint for Contribution and Indemnity against Precision. (ECF No. 47). In Counts I and II, Citation contends that Precision should be held jointly liable for Smith's death under the Illinois Joint Tortfeasor Contribution Act, 740 Ill. Comp. Stat. § 100/0.01, *et seq.* (*Id.* at 3–5). And in Counts III and IV, Citation argues that Precision should have to pay its *pro rata* share the losses under Sections 6.2 and 6.6 of the litigants' 2015 Master Service Contract. (*Id.* at 6–10). Those Sections state as follows:

> 6.2   Contractor's Personnel. CONTRACTOR [(Precision)] SHALL RELEASE, DEFEND, INDEMNIFY, AND HOLD HARMLESS COMPANY GROUP [(Citation)] FROM AND AGAINST ANY AND ALL LOSSES ARISING OUT OF BODILY INJURY OR DEATH SUFFERED BY ANY OF CONTRACTOR'S . . . EMPLOYEES . . . ARISING OUT OF, RELATED TO OR IN CONNECTION WITH THIS CONTRACT, REGARDLESS OF WHETHER CAUSED OR CONTRIBUTED BY THE SOLE, JOINT OR CONCURRENT NEGLIGENCE (IN ANY AMOUNT), GROSS NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OF ANY MEMBER OF COMPANY GROUP . . . .

(*Id.*, Ex. A at 3).

> 6.6  Third Party Claims. CONTRACTOR [(Precision)] SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS COMPANY [(Citation)] . . . FROM AND AGAINST ALL LOSSES THAT ARE ASSERTED BY ANY THIRD PARTY ARISING OUT OF, RELATED TO OR IN CONNECTION WITH THIS CONTRACT TO THE EXTENT SUCH LOSSES ARE CAUSED BY OR CONTRIBUTED TO BY THE NEGLIGENCE, GROSS NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OF CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL LOSSES THAT ARE ASSERTED BY ANY THIRD PARTY ARISING OUT OF, RELATED TO OR IN CONNECTION WITH THIS CONTRACT TO THE EXTENT SUCH LOSSES ARE CAUSED BY OR CONTRIBUTED TO BY THE NEGLIGENCE, GROSS NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OF COMPANY . . . . WHEN LOSS IS THE RESULT OF JOINT OR CONCURRENT NEGLIGENCE OF CONTRACTOR OR COMPANY, THE INDEMNITOR'S DUTY OF INDEMNIFICATION SHALL BE IN PROPORTION TO ITS ALLOCABLE SHARE OF SUCH NEGLIGENCE.

(*Id.*, Ex. A at 4). "Losses" is defined as "claims, demands, causes of action, losses, judgments, liabilities, indemnity obligations, costs, damages or expenses of any kind and character . . . ." (*Id.* Ex. A at 3).

Finally, Precision moved to dismiss the Third-Party Complaint for two main reasons. (Precision's Mem. in Support at 3). First, Precision says that any damages ultimately assessed to it as a joint tortfeasor must be capped by its total workers' compensation liability. (*Id.*). It also says that the Illinois Construction Contract Indemnification for Negligence Act (or "Anti-Indemnification Act") makes Section 6.6—the indemnification provision—void as a matter of public policy. (*Id.*).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes defendants to seek dismissal for failure to state a claim. *See* Charles Alan Wright & Arthur R. Miller, 6 Federal Practice and Procedure §§ 1363, 1455 (3d ed. 2020) (noting that Rule 12(b)(6) also applies to third-party complaints). To survive a motion to dismiss, the factual allegations in the complaint must plausibly suggest "a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All well-pleaded allegations must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Twombly*, 550 U.S. at 555.

## III. LAW & ANALYSIS

Although an employer's allocation of damages is generally capped at its total worker's compensation liability, parties can contract around that presumption. And Section 6.2's "ANY AND ALL LOSSES . . . IN ANY AMOUNT" language is an implicit waiver of this damages cap. Section 6.6 is also valid and enforceable under the Anti-Indemnification Act because it is limited to Precision's *pro rata* share of damages. Dismissal is therefore inappropriate.

### A. Joint Liability & Contribution

The Illinois Joint Tortfeasor Contribution Act provides that "where 2 or more persons are subject to liability in tort arising out of the same . . . wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 Ill. Comp. Stat. § 100/2(a). In other words, it "permit[s] claims for contribution by a third party sued by an injured employee against the plaintiff's employer . . . ." *See Doyle v. Rhodes*, 461 N.E.2d 382, 285 (Ill. 1984).

That much is undisputed: Citation, the third party being sued, is asserting the Joint Tortfeasor Contribution Act against Precision, Smith's employer. But the litigants disagree about what Precision's maximum liability is.

In *Kotecki v. Cyclops Welding Corp.*, the Illinois Supreme Court held that an employer's contribution to a third party is usually "limited by its workers' compensation liability." 585 N.E.2d 1023, 1027 (Ill. 1991). This presumption strikes a balance between "the competing interests of the employer, as a participant in the workers' compensation system, and the equitable interests of the third-party defendant in not being forced to pay more than its established fault." *Va. Sur. Co. v. N. Ins. Co. of N.Y.*, 866 N.E.2d 149, 154 (Ill. 2007).

Even so, the "*Kotecki* cap can be waived by contract," *Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968, 489 (Ill. 1997); and the employer can still "be liable for its full *pro rata* share of contribution," *Va. Sur. Co.*, 866 N.E.2d at 155.

> These cases are based upon an interpretation of what are loosely labeled "indemnity provisions" contained in contracts to which the employer was a party, which act as provisions allowing for contributions. . . . Stated another way, in these provisions, an employer agrees to unlimited liability by waiving the *Kotecki* limitation as to contribution claims. . . . Nothing in *Kotecki* prohibits an employer from volunteering to remain liable for its *pro rata* share of damages proximately caused by its negligence; *Kotecki* simply allows the employer to avail itself of the *Kotecki* cap on its liability.

*Id.* at 159.

With that in mind, Precision contends that Section 6.2 of the Master Service Contract is too broad to constitute a waiver of the *Kotecki* cap. For support, Precision cites this Court's decision in *Jentz v. ConAgra Foods, Inc.*, where Judge Reagan found that the employer did not waive the *Kotecki* cap by agreeing to an indemnity provision. No. 10-CV-0474-MJR, 2012 WL 3230447, at *4–6 (S.D. Ill. Aug. 6, 2012). More specifically, the provision lacked language like

" 'shall not be limited' or other phrases by which" the employer agreed to indemnify the third party for its own negligence; nor was there a "specific reference to the workers' compensation act . . . ." *Id.* at \*6. As a result, the Court held that the employer "did not waive its *Kotecki* protection because the provision [did] not contain sufficient specific contractual language necessary to constitute waiver." *Id.*

Unlike in *Jentz*, Section 6.2 of the Master Service Contract clarifies the litigants' intent to hold Citation harmless "AGAINST ANY AND ALL LOSSES . . . IN ANY AMOUNT" attributable to Precision's negligence. (Third-Party Compl., Ex. A at 4). Indeed, Section 6.1 defines "losses" as "claims, demands, causes of action, losses, judgments, liabilities, indemnity obligations, costs, damages or expenses of *any kind and character* . . . ." (*Id.*, Ex. A at 3) (emphasis added). True, as in *Jentz*, the contract does not mention the workers' compensation act. But the facts at hand are indistinguishable from other Illinois cases finding *Kotecki* waiver, like *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1298 (Ill. 1997) (finding *Kotecki* waiver when employer agreed to assume liability for "all loss which may result in any way"), and *Christy-Foltz, Inc. v. Safety Mutual Casualty Corporation*, 722 N.E.2d 1206, 1210 (Ill. App. Ct. 2000) (finding *Kotecki* waiver when employer agreed to assume liability for " 'any and all claims, suits, losses[,] and expenses' attributable to its own negligence"), *overruled on other grounds by Va. Sur. Co., Inc.*, 866 N.E.2d at 345–46. Moreover, given that the litigants executed the Master Service Contract in 2015, Precision presumably contracted with knowledge of the cap. In sum, Section 6.2 is a valid *Kotecki* waiver.

### B. Indemnification

Alternatively, Precision argues that Section 6.6 of the Master Service Contract is void under the Illinois Construction Contract Indemnification for Negligence Act. That statute "voids any agreement in a construction contract to indemnify or hold harmless a person from that person's own negligence." *Va. Sur. Co.*, 866 N.E.2d at 154 (citing 740 Ill. Comp. Stat. § 35/1).

> The purpose of the Anti-Indemnification Act is to foster workplace safety by preventing a party from insulating itself from liability through the use of a contractual indemnity provision which may deter the exercise of ordinary care. For example, the Anti-Indemnification Act would render void a contractual provision in which a subcontractor agreed to pay all damages resulting from an injury to its employee, even the *pro rata* share of a general contractor who was partially at fault.

*Id.* at 155. In other words, "as a matter of public policy, courts will not enforce promises to indemnify contained in construction contracts because their dominant aspect is the disincentive for the indemnitee to exercise care." *Braye*, 676 N.E.2d at 1303.

Like the *Kotecki* cap, however, the Anti-Indemnification Act's prohibition is not ironclad. In *Liccardi v. Stolt Terminals, Inc.*, the Illinois Supreme Court similarly considered whether an indemnification provision was enforceable under the Anti-Indemnification Act. 687 N.E.2d 968, 489 (Ill. 1997). The employer there agreed "to indemnify and hold harmless" a third party "from all loss or the payment of all sums of money by reason of all accidents, injuries, or damages to persons or property that may happen or occur in connection therewith." *Id.* at 490. The court noted that the Anti-Indemnification Act was enacted before the contract was signed, so the third party presumably knew that "indemnity promises in construction contracts are void in violation of public policy and that a court would not enforce any contractual language that would suggest such a promise." *Id.* at 491–50. Indeed, "[t]he parties are presumed to have entered into their agreement with knowledge of the existing law"; and " 'a construction of a contract which renders the

agreement enforceable rather than void is preferred.'" *Id.* at 491 (quoting *Braye*, 676 N.E.2d at 1303).

> Moreover, there [was] no indication that [the third party] ever believed that the contract entitled it to indemnification for its own negligence. . . . Because [the third party] did not construe [the provision] as relieving it of liability for its own acts or omissions, that paragraph did not extinguish [the third party's] incentive to exercise due care, and the primary purpose behind the Construction Contract Indemnification for Negligence Act was not implicated.

*Id.* at 450. Thus, the *Liccardi* court found that the indemnification provision was not void under the Anti-Indemnification Act; and the third party could invoke it to establish the employer's waiver of the *Kotecki* cap. *Id.*

As in *Liccardi*, Section 6.6 is not void under the Anti-Indemnification Act. By limiting Precision's liability "TO ITS ALLOCABLE SHARE OF SUCH NEGLIGENCE," Section 6.6 does not thwart the statute's purpose, to ensure "a continuing motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions." *See Davis v. Commonwealth Edison Co.*, 336 N.E.2d 881, 884 (Ill. 1975). In other words, the policies underlying the Anti-Indemnification Act "are not offended by [Section 6.6] because the goals of achieving comparative fault and encouraging good-faith settlement remain intact." *See Braye*, 676 N.E.2d at 1304. And like the *Kotecki* cap, the Court will presume Citation knew that any attempt to seek indemnity from Precision for Citation's own negligence would be futile under the Anti-Indemnification Act; so the Court cannot conclude that Section 6.6 extinguished Citation's incentive to exercise care. *See id.* Put differently, Precision can be held liable for its *pro rata* share of the fault under Section 6.6.

IV. **CONCLUSION**

The Court **DENIES** Third-Party Defendant Precision Plugging & Sales, Inc.'s Motion to Dismiss Third-Party Complaint.

**IT IS SO ORDERED.**

**Dated: Monday, May 24, 2021**

                                            **S/J. Phil Gilbert**
                                            **J. PHIL GILBERT**
                                            **UNITED STATES DISTRICT JUDGE**