IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEISHA D. SIMMONS,<br>*Independent Administrator of the Estate of Steven L. Smith*,<br>Plaintiff,<br><br>v.<br><br>CITATION OIL AND GAS CORPORATION,<br>Defendant.<br><br>―――――――――――――――――――<br><br>CITATION OIL AND GAS CORPORATION,<br>Third-Party Plaintiff,<br><br>v.<br><br>PRECISION PLUGGING AND SALES, INC.,<br>Third-Party Defendant. | Case No. 19–CV–00053–JPG |

## **MEMORANDUM & ORDER**

This is a personal injury case arising from the death of Steven L. Smith, who died tragically while working on an oil field. This matter comes before the Court on a discovery dispute: Plaintiff Keisha D. Simmons, administrator of Smith's estate, moved to compel Defendant Citation Oil & Gas Corporation ("Citation") to respond to certain discovery requests. (ECF No. 59). Citation's specific objections are stated in the Motion. For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Simmons's Motion and **ORDERS** Citation to respond to Interrogatory 2(e), Interrogatory 5, Interrogatory 7(k), Interrogatory 9(c), Interrogatory 10, Interrogatory 11, Interrogatory 13, Interrogatory 14, Interrogatory 15, Request to Produce 2, Request to Produce 4, Request to Produce 6, Request to Produce 7, Request to Produce 10, Request to Produce 11,

Supplemental Interrogatory 5, Supplemental Request to Produce 3, Supplemental Request to Produce 6, and Supplemental Request to Produce 8.

## I. PROCEDURAL & FACTUAL HISTORY

On November 14, 2017, Citation owned and operated an oil field in Crossville, Illinois within this District. (Compl. at 13, ECF No. 1). More specifically, it hired Precision Plugging and Sales, Inc. ("Precision") as an independent contractor to extract oil from an elevated pumpjack well known as "EM Fenton #9." (*See id.*).

Near EM Fenton #9, Precision owned and maintained a trailer that "was used as a place of shelter, to store tools and to hold meetings." (*Id.* at 14). The trailer contained a propane heater with "an ignited pilot light." (*Id.*).

Sadly, "crude oil and Hydrogen Sulfide began discharging from" EM Fenton #9 while Steven Smith, a Precision employee, was working on the site. (*Id.*). Those stray combustibles were ignited by the propane heater, causing an explosion that engulfed Smith in flames, killing him. (*Id.*).

Keisha Simmons—administrator of Smith's estate—sued Citation in this Court, alleging several state-law tort claims. (*Id.* at 1–11). Simmons then issued interrogatories and requests to produce to Citation, who objected to several. (Simmons's Mot. to Compel at 2–18). Now, Simmons asks the Court to compel Citation to answer the interrogatories and produce the requested documents. (*Id.*).

## II. LAW & ANALYSIS

A party may serve written interrogatories, Fed. R. Civ. P. 33(a)(1), and requests for document production, Fed. R. Civ. P. 34(a)(1), on any other party "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed R. Civ. P. 26(b)(1).

If a party fails to respond to an interrogatory or to produce document, then the "party seeking discovery may move for an order compelling an answer, designation, production, or inspection" Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). "The grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Similarly, an objection to a request for document production "must state whether any responsive materials are being withheld and the basis for that objection." Fed. R. Civ. P. 34(b)(2)(C). And as in all discovery matters, "[d]istrict court judges have broad discretion" in resolving disputes. *See Fields v. City of Chi.*, 981 F.3d 534, 551 (7th Cir. 2020).

### A. Interrogatory 2(e)

Simmons asks Citation whether there were "any contracts in effect on November 14, 2017 between" Citation and Precision and, if so, "[w]hich entity was contractually responsible for" Smith's safety. (Simmons's Mot. to Compel at 2).

Citation says that there were, in fact, contracts in effect between itself and Precision on November 14; but it "objects on the basis that [the] interrogatory seeks information protected by attorney-client and work-product privilege," and "further objects on the basis that the interrogatory is vague and ambiguous." (*Id.* at 3). The Court disagrees.

First, attorney-client privilege is inapplicable because there is no indication that the contracts constitute "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance . . . ." *See Fisher v. United States*, 425 U.S. 391, 403 (1976). Indeed, "[t]he purpose

of the privilege is to encourage clients to make full disclosure to their attorneys"; and it only applies "where necessary to achieve [that] purpose." *Id.* Given that the requested information does not stem from any communication from an attorney to her client but from a contract between two business entities, attorney-client privilege is irrelevant.

Similarly, the work-product doctrine applies to "certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *United States v. Noble*, 422 U.S. 225, 238 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)). This doctrine is inapplicable too: Citation makes no suggestion that the contracts at issue were made with an eye toward litigation.

Finally, the Court disagrees that the interrogatory is vague and ambiguous. If anything, it is rather clear: If Citation and Precision agreed as to who would be responsible for Smith's safety, then Citation must make that known. The Court therefore **ORDERS** Citation to respond to Interrogatory 2(e).

### B. Interrogatory 3

Simmons asks Citation to "state each and every person employed by and/or an agent of [Citation] that was at the oil field," along with their addresses, telephone numbers, job titles, job duties, date of hire, purpose for being there, and their current employment status. (Simmons's Mot. to Compel at 3). Simmons also wants to know who was present specifically at EM Fenton #9. (*Id.*).

Citation objects on the basis that the interrogatory "is overboard, unduly burdensome and seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*). The Court agrees.

As Simmons admits, Citation's oil field contains "numerous elevated pumpjack oil wells . . . ." (*Id.*). Only one, however, is at issue: EM Fenton #9. As written, Interrogatory 3 is overbroad and unduly burdensome because it encompasses far more than necessary to determine

who was at that well leading up the accident—who was working at the other wells, for example, is irrelevant. This interrogatory should be tailored to focus on those who worked at, supervised, and were otherwise responsible for EM Fenton #9.

### C. Interrogatory 5

Simmons asks Citation, "Do ***you*** have or claim to have knowledge of any ***statement*** concerning the ***occurrence*** allegedly made by any ***person*** with knowledge of the ***occurrence*** or the facts or circumstances?" (*Id.* at 4) (emphasis in original). If so, then Simmons also wants to know when and where the statements were made; who was present; whether it was recorded in writing or otherwise; and, if made orally, what the substance of the statement was. (*Id.*).

Citation objects on the basis that the "interrogatory seeks information protected by attorney-client and work-product privilege." (*Id.*). Simmons, however, says that "[w]ithout a privilege log, it is impossible for [her] to know what statements/documents are being withheld." (*Id.* at 5).

The Court agrees that Citation's objection is not specific enough to sustain a claim of privilege. "The decision whether a document is privileged is for the court, not the party." 8 Federal Practice and Procedure § 2016.1 (3d ed. 2021). And without more information, the Court has no way to assess Citation's claim. In other words, Citation must at least identify the statements and provide enough detail to present the question to the Court. The Court therefore **ORDERS** Citation to respond to Interrogatory 5.

### D. Interrogatory 7(k)

Simmons asks Citation for "[a]ll unprivileged conversations Mr. Barry"—Citation's Operations Safety Coordinator—"has had concerning this occurrence and the subject matter of such conversations." (Simmons's Mot. to Compel at 5).

Citation objects on the basis that the interrogatory "is vague and ambiguous." (*Id.*).

This interrogatory is likely repetitive of Interrogatory 5, which Citation is now required to answer. That said, it is not vague—Barry's statements on the matter may prove relevant; so if Citation knows of any unprivileged statements he has made, then it must disclose them. The Court therefore **ORDERS** Citation to respond to Interrogatory 7(k).

### E. Interrogatory 9(c)

Simmons asks Citation for information about "the substance of each investigation" involving the accident. (*Id.* at 6).

Citation objects on the basis that the "interrogatory seeks information protected by attorney-client and work-product privilege."

Here too, Citation's objection is not specific enough to sustain a claim of privilege. While it seems more likely this time that the reports may be protected, the Court has no way to determine that. As before, Citation must at least identify the reports and provide enough detail to present the question to the Court. The Court therefore **ORDERS** Citation to respond to Interrogatory 9(c).

### F. Interrogatory 10

Simmons asks Citation whether there "[w]ere any incident reports, memoranda, notes, or other investigatory notes made as a result of the *occurrence*[.]" (*Id.* at 7) (emphasis in original).

Citation objects on the basis that the "interrogatory seeks information protected by the attorney-client and work-product privilege." (*Id.*).

Yet again, Citation has not provided enough information for the Court to gauge its claim of privilege. The Court therefore **ORDER** Citation to respond to Interrogatory 10, identifying the supposedly privileged documents and stating why it believes they are protected.

### G. Interrogatory 11

Simmons asks citation whether there "[w]ere any safety manuals, policies, protocols, standards, guidelines or writings used to educate [Citation's] employees and/or agents about the risks of open flames near oil/gas; need to keep the discharge of oil and gas downwind of the well; supervision on employee/agent/contractor conduct near an oil well; and/or risks of open flame heaters in the work place[.]" (*Id.* at 8). If so, then Simmons also asks Citation to identify them, whether they were followed on the day of the accident, who had access to them, and whether they were provided to three individuals in particular: Randy Barrett, David Carter, and Jacob Elliot. (*Id.*)

Citation objects on the basis that the "interrogatory is overbroad, unduly burdensome, vague and ambiguous, unlimited in time and scope, and seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.* at 8). The Court disagrees.

Whether there were safety standards and protocols in place at the time of the incident is relevant to establishing negligence. The interrogatory is also not unlimited in time and scope—Simmons specifically states that she seeks those policies in place on the day of the accident, November 14, 2017. The Court also fails to see how this interrogatory is ambiguous or unduly burdensome. The Court therefore **ORDERS** Citation to respond to Interrogatory 11.

### H. Interrogatory 12

Simmons asks Citation, "Do **you** agree that [Citation] should have complied with the Recommended Practice for Occupation Safety for Oil and Gas Well Drilling and Services Operations published by the American Petroleum Institute on November 14, 2017?" (*Id.* at 9) (emphasis in original).

Citation objects on the basis that the interrogatory "is overbroad, unduly burdensome, vague and ambiguous." (*Id.*). It also contends that it "seeks information protected by attorney-client privilege and work-product doctrine." (*Id.*). The Court agrees—what Citation's counsel believes its client should have done is irrelevant and may also fall under attorney-client privilege.

### I. Interrogatory 13

Simmons asks Citation whether it knew that Precision "was using open flame propane heaters from January 1, 2013 through November 14, 2017 while performing work for [it]." (*Id.*).

Citation objects on the basis that the interrogatory "is overbroad, unduly burdensome, vague and ambiguous[,] . . . irrelevant, immaterial, unlimited in scope and not reasonable calculated to lead to the discovery of admissible evidence." (*Id.*). The Court disagrees.

Interrogatory 13 does not suffer from any of the deficiencies Citation now claims. Whether Citation knew of Precision's open-flame practices during the time Smith worked on the oil field is relevant and material to establishing negligence, and the interrogatory is not unlimited in scope—the period is from January 1, 2013, through January 14, 2017. The Court therefore **ORDERS** Citation to respond to Interrogatory 13.

### J. Interrogatory 14

Simmons asks Citation to state whether it "conducted any safety meetings at said oil field in the two years prior to November 14, 2017." (*Id.* at 10). If so, she also wants to know who conducted those meetings; when, where, how often; who was present; whether Citation maintained a list of attendees; whether "any safety/training materials or documents" provided; whether attendance was required; and who, if anyone, had to attend. (*Id.*).

Citation objects to the "interrogatory on the basis that it is overbroad, unduly burdensome, vague, ambiguous and seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*). That said, it admits that "it conducted monthly safety meetings and also conducted operation specific tailgate meetings." (*Id.*).

The Court agrees that information about these safety meetings is relevant and material to establishing negligence. And given that Smith worked for Precision for four years, the two-year temporal scope of the interrogatory is reasonable and proportionate. The Court therefore **ORDERS** Citation to respond to Interrogatory 14.

### K. Interrogatory 15

Simmons asks Citation for information about the relationship between Citation and Precision "from January 1, 2013 through November 14, 2017, including" how many times Citation contracted with Precision, whether Citation controlled Precision's work, whether Precision's agents and employees are required to follow Citation's safety standards, whether Citation required Precision's agents and employees to undergo "certain training or education before being allowed to work" on the oil field, whether Citation was "able to stop the work being performed by Precision," how Citation provided Precision with instructions on how to perform its job duties, how Citation payed Precision, and "[w]hat control and/or oversight [Citation's] safety coordinator has over" Precision's work. (*Id.* at 11).

Citation objects to the "interrogatory on the basis that it is overbroad, unduly burdensome, vague, ambiguous and seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*). It also "states that the relationship between the parties was governed by [the] Master Service Contract" that was already produced. (*Id.*).

The Court agrees with Simmons that Citation's objections here are baseless. The interrogatory seeks to uncover the degree of control Citation exercised over Precision's work. Control is relevant here in determining whether Precision's alleged negligence can be imputed onto Citation. The interrogatory also points to safety standards and oversight, which are similarly relevant in determining whether there were adequate measures in place that could have prevented the accident. These questions cannot be answered by simply examining the contract. The Court therefore **ORDERS** Citation to respond to Interrogatory 15.

### L. Interrogatory 18

Simmons asks Citation to "[i]dentify any statements, information and/or documents known to you and requested by any of the foregoing interrogatories which you claim to be work product or subject to any common law or statutory privilege, and with respect to each interrogatory, specific the legal basis for the claim." (*Id.* at 12).

Citations did not specifically object to this interrogatory but directed Simmons to the "specific objections on the basis of work-product privilege and attorney-client privilege previously asserted in response to specific interrogatories." (*Id.*). Simmons is dissatisfied with that response and asks the Court to compel Citation to produce a privilege log. (*Id.*).

This issue is moot because Court has already addressed several of Citation's assertions of privilege and has ordered it to either respond to the interrogatories or to provide more detail as to why privilege might apply (*i.e.*, a privilege log).

### M. Request to Produce 2

Simmons asks Citation to produce "[a]ny ***statements*** identified in your answer to Interrogatory 5 or any other documents and/or electronically stored information which relates to the subject occurrence." (*Id.*) (emphasis in original).

Citation objects to the "request on the basis that it is overbroad, unduly burdensome, vague and ambiguous and seeks the protective [sic] of documents protected by attorney-client and work-product privilege." (*Id.*). The Court disagrees.

Yet again, the Court fails to see how a request for statements or documents about the accident made by those with personal knowledge of what happened is overbroad, unduly burdensome, vague, or ambiguous. And as before, the Court cannot determine whether any such statements or documents are privileged without more information. The Court therefore **ORDERS** Citation to respond to Request to Produce 2.

### N. Request to Produce 4

Simmons asks Citation to produce "[t]he complete employee files of David E. Carter, Jacob F. Elliot and Randy L. Barrett." (*Id.* at 13).

Citation objects to the request on the basis that it "is overbroad unduly burdensome, irrelevant[,] immaterial, not reasonably calculated to lead to the discovery of admissible evidence and seeks information that is personal and confidential." (*Id.*).

"[D]istrict courts have broad discretion to limit a request for the discovery of personnel filed, in order to prevent the dissemination of personal or confidential information about employees." *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009). "The court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truth-seeking function' in the particular case before the court." *Id.* (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)).

Simmons seeks the files of Citation's "production foreman that were on the scene on the date of the injury and in charge of the subject oilfield on the date of injury" (Carter and Elliot) and its "Operations Safety Coordinator that was on site and in charge of safety at the subject oilfield on the date of the injury" (Barrett). The Court agrees that these personnel files are relevant to determine what roles these individuals played in the accident, including what their specific job duties were, whether they were adequately trained, and whether they had disciplinary issues. On the other hand, Citation offers no valid reason why producing these records would be unduly burdensome in any way. The Court therefore **ORDERS** Citation to respond to Request to Produce 4 and to redact any protected health information, social security numbers, and other sensitive personal information.

### O. Request to Produce 6

Simmons asks Citation to "produce a copy of each document generated during such inspection, test or measurement, or evidence *your* answer to Interrogatories 9 and/or 10." (Simmons's Mot. to Compel at 13) (emphasis in original).

Citation objects to the "request on the basis that it seeks documents protected by attorney-client and work-product privilege." (*Id.*).

Again, the Court cannot evaluate Citation's claim of privilege until it at least identifies the documents and provides the Court with more information. The Court therefore **ORDERS** Citation to either respond to Request to Produce 6 or provide a privilege log that includes enough information for the Court to determine whether privilege exists.

### P. Request to Produce 7

Simmons asks Citation to produce "[a]ll *documents* contained in *your* investigation files." (*Id.* at 14) (emphasis in original).

Citation objects to the "request on the basis that it seeks documents protected by attorney-client privilege and work-product privilege." (*Id.*).

The Court agrees that these documents very well may be protected by attorney-client privilege and work-product privilege. That said, there is no way to know until Citation provides a privilege log. The Court therefore **ORDERS** Citation to either respond to Request to Produce 7 or provide a privilege log that includes enough information for the Court to determine whether privilege exists.

### Q. Request to Produce 10

Simmons asks Citation to produce "[a]ny and all safety manuals, policies, protocols, standards, guidelines or writings that are identified in [its] answers to interrogatories 11 and 14 and any and all safety/training manuals, policies, protocols, standards, guidelines or writings that are relevant to this occurrence." (*Id.*).

Citation objects to the "request on the basis that it violates attorney-client privilege and work-product privilege." (*Id.*). The Court disagrees.

As discussed above, there is no indication that these documents were confidential attorney-client communications or otherwise produced with an eye towards litigation: Neither privilege applies. The Court therefore **ORDERS** Citation to respond to Request to Produce 7.

### R. Request to Produce 11

Simmons asks Citation to produce "[a]ll *statements* made by *persons* not a party to this suit, either written, recorded or otherwise, that pertain to this occurrence." (*Id.* at 15).

Citation objects to the "request on the basis that it seeks documents protects by attorney-client or work-product privilege." (*Id.*).

Here too, the Court cannot evaluate Citation's claim of privilege until it identifies the documents and provides information about their substance or otherwise makes them available to the Court for inspection. The Court therefore **ORDERS** Citation to respond to Request to Produce 11.

### S. Supplemental Interrogatory 5

Simmons asks Citation whether "any insurance company, including Travelers, or any entity perform[ed] an investigation of the November 14, 2017 incident that [it] is aware of." (*Id.* at 16). If so, then Simmons also asks who conducted that investigation and whether any documents were produced as a result. (*Id.*).

Citation objects to the "interrogatory on the basis that it seeks information protected by attorney-client privilege, insured-insurer privilege and the work-product doctrine." (*Id.*).

Illinois recognizes a privilege that "extends to communications between an insurer and an insured, where the insurer is under an obligation to defend the insured." *See Pietro v. Marriott Senior Living Servs., Inc.*, 810 N.E.2d 217, 226 (Ill. App. Ct. 2004). "[T]he party asserting the privilege must prove: (1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend a lawsuit; and (4) that a communication was made between the insured and an agent of the insurer." *Id.*

Citation met none of these prerequisites for asserting insurer-insured privilege—it refuses to acknowledge the identity of the insurance carrier, whether it had a duty to defend, or even point to any potentially protected communications. Similarly, without more information, the Court cannot evaluate its claims of attorney-client or work-product privilege. The Court therefore **ORDERS** Citation to respond to Supplemental Interrogatory 5 or otherwise provide a privilege log explaining why it believes any of these privileges apply.

### T. Supplemental Request to Produce 3

Simmons asks Citation to "produce any and all training material provided to Randy Barrett to prepare for his employment by Citation that he reviewed prior to November 14, 2017, including, but not limited to, such materials concerning H2S gas and open flames." (Simmons's Mot. to Compel at 17).

Citation objects to the "request on the basis that it is overbroad, unduly burdensome, vague, ambiguous and seeks the production of documents that are irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*). The Court disagrees.

None of Citation's objections hold water. Simmons states that the evidence so far "strongly suggests that the subject fire was caused when H2S gas reached and [sic] open flame at the scene." (*Id.*). Whether Barrett received any training on how to prevent gas leaks is clearly relevant to assessing liability, and nothing about the interrogatory is vague or ambiguous. The Court therefore **ORDERS** Citation to respond to Supplemental Request to Produce 3.

### U. Supplemental Request to Produce 6

Simmons asks Citation to "provide any 'daily sheets' or 'daily logs' that have been referred to in depositions taken to date concerning work completed during the period of January 1, 2017 through December 31, 2017." (*Id.*).

Citation objects to the "request on the basis that it is overbroad, unduly burdensome, vague, ambiguous and seeks the production of documents that are irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*). The Court disagrees.

This interrogatory is limited to those documents referred to in depositions, which suggests that they have at least some relevance to this case. Indeed, Simmons states that they "summarize the work that was done and" other occurrences that day. (*Id.*). In other words, the documents may

help paint a clearer picture of what happened in the days before the accident and potentially reveal its true cause. The Court therefore **ORDERS** Citation to respond to Supplemental Request to Produce 6.

### V. Supplemental Request to Produce 8

Finally, Simmons asks Citation to "provide any safety materials, other documentation or other information that Precision submitted to Citation prior to or after executing the Master Service Agreement, including, but not limited to, such materials or documents that were submitted through a portal or to Avetta, PICS or similar companies that Citation had retained." (*Id.* at 18).

Citation objects to the "request on the basis that it is overbroad, unduly burdensome, vague, ambiguous and seeks the production of documents that are irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*).

The Court agrees that the request, as written, is overbroad and not reasonably calculated to lead to relevant evidence. That said, Simmons notes in her response that she only seeks information relating to safety documentation; and that to the extent that this request includes any other information, "it is withdrawn." (*Id.*). The Court agrees with Simmons that "[w]ithdrawing such aspect of the request should eliminate the basis for the objection." (*Id.*). Given that Precision was contractually obligation to send Citation "certain safety documentation," (*see id.*), it may ultimately prove relevant to assessing liability for the accident. The Court therefore **ORDERS** Citation to respond to Supplemental Request to Produce 8 as modified.

### III.   CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Simmons's Motion to Compel and **ORDERS** Defendant Citation Oil & Gas Corporation to respond to Interrogatory 2(e), Interrogatory 5, Interrogatory 7(k), Interrogatory 9(c), Interrogatory 10, Interrogatory 11,

Interrogatory 13, Interrogatory 14, Interrogatory 15, Request to Produce 2, Request to Produce 4, Request to Produce 6, Request to Produce 7, Request to Produce 10, Request to Produce 11, Supplemental Interrogatory 5, Supplemental Request to Produce 3, Supplemental Request to Produce 6, and Supplemental Request to Produce 8.

**IT IS SO ORDERED.**

**Dated: Friday, July 2, 2021**

<u>S/J. Phil Gilbert</u><br>
**J. PHIL GILBERT**<br>
**UNITED STATES DISTRICT JUDGE**